J-A28029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.R.R., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.R.R., SR., FATHER | : | No. 1935 EDA 2017 |

Appeal from the Decree May 23, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-AP-0000485-2017
CP-51-DP-0002090-2015

BEFORE:  GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 29, 2017**

D.D.R., Sr. ("Father"), appeals from the decree entered May 23, 2017, in the Court of Common Pleas of Philadelphia County, which involuntarily terminated his parental rights to his minor son, D.D.R., Jr. ("Child"), born in November 2010.[1] Additionally, Father's counsel has filed a motion to withdraw and brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). Upon review, we grant counsel's motion to withdraw and affirm the decree.

---

[1] Child's mother, T.E. ("Mother"), executed a consent to adoption form on May 23, 2017. Despite being identified as T.E. throughout the record, Mother signed the consent form as "T.R.," using Father's last name. The record does not indicate whether the trial court ultimately confirmed the consent and terminated her parental rights.

We summarize the relevant factual and procedural history of this matter as follows. The trial court entered an order of protective custody placing Child in foster care on July 28, 2015, based on Mother's substance abuse issues. Two days later, the court entered a shelter care order maintaining Child's placement. The Philadelphia Department of Human Services ("DHS") subsequently filed a dependency petition, and the court adjudicated Child dependent.

The pleadings indicate DHS did not initially know Father's identity or his whereabouts. *See* Dependency Petition, 8/5/15, Statement of Facts at ¶f. However, DHS later identified Father, and determined that he was incarcerated for prohibited possession of a firearm. *See* DHS Exhibit 2 (Secure Court Summary). Father has been incarcerated since approximately January 2012, when Child was just over a year old. *See* N.T., Termination Hearing, 5/23/17, at 8.

In April 2017, DHS filed a petition to involuntarily terminate Father's parental rights to Child. The trial court conducted a termination hearing. Following the hearing, the court entered a decree terminating Father's parental rights. Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal. Father's counsel filed an *Anders* brief and motion to withdraw in this Court.

Before reaching the merits of Father's appeal, we first must address counsel's motion to withdraw.[2] To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
> (3) set forth counsel's conclusion that the appeal is frivolous; and
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

---

[2] This Court extended the **Anders** procedure to appeals from decrees involuntarily terminating parental rights in **In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992).

***Santiago***, 978 A.2d at 361.

Father's counsel filed a motion to withdraw, certifying he has reviewed the case and determined that Father's appeal is frivolous. Counsel attached to his motion a copy of his letter to Father, advising him that he may obtain new counsel or raise additional issues *pro se*. Counsel also filed a brief, which includes a summary of the history and facts of the case, potential issues that could be raised by Father, and counsel's assessment of why those issues are meritless, with citations to relevant legal authority.

Counsel has complied with the requirements of ***Anders*** and ***Santiago***. Father has not filed a response. We may proceed to review the issues outlined in the ***Anders*** brief.

Counsel's ***Anders*** brief raises the following issues for our review.

THE GLOBAL QUESTION

Whether there is anything in the record that might arguably support the appeal that obviates a conclusion that the appeal is frivolous[?]

SPECIFIC AREAS OF INQUIRY

1. Whether under the Juvenile Act, 42 Pa.C.S.A. Section 6351, and 55 Pa.Code Section 3130.4, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Father with the child and whether the goal change to adoption was the disposition best suited to the safety, protection and physical, mental and moral welfare of the child[?]

2. Whether it was proven by clear and convincing evidence that Father's parental rights should be terminated under Section 2511(a)(1), (2) and 2511(b)[?]

***Anders*** Brief, at 6.[3]

We review Father's claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests

---

[3] In his notice of appeal, concise statement, and brief, Father indicates he is challenging both the termination decree and the order changing Child's permanent placement goal to adoption. While the trial court stated it was changing Child's goal to adoption at the conclusion of the termination hearing, and while the court indicates in its opinion that it changed Child's goal, our review of the record reveals that the court's May 23, 2017 permanency review order actually maintained Child's goal as return to parent or guardian. Because the court did not enter a goal change order, we do not address any goal change issues in this memorandum.

of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

The trial court terminated Father's parental rights pursuant to § 2511(a)(1), (2), and (b). We need only agree with the court as to any *one* subsection of § 2511(a), as well as § 2511(b), to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We analyze the court's decision to terminate under subsection (a)(2) which provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

And subsection (b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

We begin our analysis with subsection (a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).

"The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted). Importantly, "a parent's incarceration is relevant to the section (a)(2) analysis and, depending on the circumstances of the case, it may be dispositive of a parent's ability to provide the 'essential parental care, control or subsistence' that the section contemplates." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted).

The court found Father is incapable of parenting Child, and that he cannot, or will not remedy his parental incapacity. *See* Trial Court Opinion, 7/12/17, at 5. The court emphasized Father's lengthy criminal history, his ongoing incarceration, the dearth of evidence that he will be able to parent Child upon his release, and his lack of recent visits with Child. *See id.*, at 4-5.

Father argues the trial court abused its discretion, because he is capable of complying with DHS and remedying the conditions that necessitated Child's placement in foster care. *See Anders* Brief, at 24. Father further argues DHS failed to provide him with reasonable reunification efforts. *See id*., at 16-19.

Our review of the record supports the trial court's findings. During the termination hearing, DHS presented a copy of a secure court summary detailing Father's criminal history. *See* DHS Exhibit 2 (Secure Court Summary). The summary reveals Father was convicted of murder and possessing an instrument of crime in 1995, due to an incident that occurred while he was a juvenile. Father also pled guilty to unauthorized use of a motor vehicle and providing false identification to a law enforcement officer in 2009. The criminal record does not end there. Most recently, Father pled guilty to prohibited possession of a firearm in July 2013.[4] Father testified he has been incarcerated for five years and four months, and that his maximum sentence will expire in May 2018. *See* N.T., Termination Hearing, 5/23/17, at 8.

In addition, DHS presented the testimony of Tiffany Murray, of Wordsworth Community Umbrella Agency.[5] Ms. Murray testified Father speaks with Child daily on the telephone. *See id*., at 22. However, because of his

---

[4] The summary reveals Father was first arrested for this offense eight years earlier, in 2005.

[5] Ms. Murray's job title is not specified in the record.

incarceration, Father has not actually seen Child in approximately three to five years.[6] *See id*., at 13. Ms. Murray further testified Father will not be in a position to care for Child upon his release from incarceration. *See id*., at 17. Ms. Murray believed Father does not have housing, and will need to live in a halfway house. *See id*., at 13-17. He will also need to complete a parenting capacity evaluation, an anger management program, and a mental health assessment. *See id*., at 12-13.

Thus, the record confirms that Father is incapable of parenting Child, and that Father cannot, or will not, remedy his parental capacity. Father has been incarcerated for nearly Child's entire life, and will not be released until May 2018.

Even after Father is released from incarceration, it remains to be seen whether he will be able to display appropriate parenting skills, avoid future criminal activity, and maintain the stability necessary to care for Child. Child cannot be made to wait for a permanent home any longer. "[A] child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

---

[6] Father informed Ms. Murray that he last saw Child when he was three. *See* N.T., Termination Hearing, 5/23/17, at 13. Mother, however, informed Ms. Murray that Father last saw Child when he was one. *See id*.

Additionally, as for Father's claim that DHS failed to provide him with reasonable reunification efforts, our Supreme Court has held that the failure to provide such efforts does not preclude the termination of parental rights pursuant to subsection (a)(2). *See In re D.C.D.*, 105 A.3d 662, 673 (Pa. 2014) ("[T]he Pennsylvania legislature has not incorporated reasonable efforts into the language of 23 Pa.C.S. § 2511(a)(2), and it would be improper and, indeed, unwise for this Court to add such an element to the statute by judicial fiat.")

We next consider whether the trial court abused its discretion by involuntarily terminating Father's parental rights pursuant to subsection (b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

The court found that terminating Father's parental rights would best serve Child's needs and welfare, reasoning that Child has not seen Father in three years, and that Child has a parental bond with his maternal grandmother, who is able to meet his medical, educational, and emotional needs. *See* Trial Court Opinion, 7/12/17, at 5-6.

Father argues the trial court abused its discretion because Child "would be best off with him and [] he is best suited to provide [for] the developmental, physical and emotional needs and welfare of his child." *Anders* Brief, at 24. That is nothing more than wishful thinking.

As discussed, Father's testimony indicates he was incarcerated in approximately January 2012, when Child was just over a year old. Child would have no recollection of being in Father's care—if he was ever in Father's care at all—and his only consistent experience of Father would be phone calls—from prison. Child does not have a parent/child bond with Father. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (concluding that "[w]hatever relationship K.Z.S. has been able to build with Mother during their four years of almost constant separation must be fairly attenuated, given the circumstances of this case").

Also, Ms. Murray testified Child resides in a pre-adoptive foster home with his maternal grandmother and his three siblings. *See* N.T., 5/23/17, at

14. Child is bonded to his maternal grandmother and his siblings. ***See id***. Child's bond with his maternal grandmother is similar to a parent/child bond, and he refers to her as "Mom-mom." ***Id***., at 15, 18. Ms. Murray opined that there was no reason to believe that Child would suffer irreparable harm if Father's parental rights are terminated. ***See id***., at 19.

Our independent review of Father's claims demonstrates that they do not entitle him to relief. In addition, our review of the record does not reveal any non-frivolous issues overlooked by counsel. We grant counsel's motion to withdraw, and we affirm the May 23, 2017 decree.

Decree affirmed. Motion to withdraw granted.

President Judge Gantman joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2017